## HOLT *v.* CALAWAY.

### Opinion delivered December 20, 1920.

1. BROKERS—RIGHT TO COMMISSION FOR PROCURING PURCHASER OF LAND.—In an action by brokers to recover a commission for procuring a purchaser of land, evidence *held* to make it a jury question whether defendant had prevented plaintiffs from making the sale and earning the commission.

2. BROKERS—INSTRUCTIONS.—Where an instruction placed the burden on brokers to prove a contract for a commission if certain persons bought the land, regardless of whether plaintiffs made the sale, it was error not to submit also the issue made by the testimony as to whether or not the owner prevented the brokers from making the sale.

Appeal from Independence Circuit Court; *Dene H. Coleman,* Judge; reversed.

*Earl D. Casey* and *W. K. Ruddell,* for appellants.

The court erred in refusing to give instructions 1 and 2 asked by plaintiffs. Appellants did all the work toward the sale of the land, while Case and partners did nothing, and it would be rank injustice under all the evidence if they could not collect the commission fairly earned, or at least have the question of the unfairness of defendant Calaway submitted to the jury. 112 Ark. 227, 235.

*Samuel M. Casey* and *John B. & J. J. McCaleb,* for appellees.

1. The requested instructions are abstract; there was no evidence to support either of them. 82 Ark. 424; 2 *Id.* 360; *Ib.* 133; 9 *Id.* 212; 76 *Id.* 599; 85 *Id.* 390; 89 *Id.* 24; 95 *Id.* 597; 104 *Id.* 59.

2. They are not responsive to the issue. 23 Ark. 289; 52 *Id.* 120; 78 *Id.* 553; 83 *Id.* 205, 395; 88 *Id.* 12; 89 *Id.* 147.

3. They were ambiguous and misleading. 5 Ark. 651; 18 *Id.* 521; 83 *Id.* 395; 74 *Id.* 468.

Wood, J. The appellants brought this action against the appellees. Appellants alleged that they had a contract with appellees to sell for them a certain tract of land; that appellants were to sell the land for the sum of $8,100, and appellees agreed to pay them a five per cent. commission; that appellants showed R. W. Webster and A. L. Webster, his wife, prospective purchasers, the property. While the Websters were on the ground looking at the land, the appellees raised the price from $8,100 to $8,500 and informed the appellants that if the Websters bought the land appellants would receive their commission; that the Websters did buy the land, but that the appellees had refused to pay the appellants their commission. Appellants therefore prayed judgment in the sum of $425.

Appellees answered denying the contract set up in appellant's complaint, but admitted that they did agree to pay appellants five per cent. on the sale of the lands, provided appellants sold the same. They alleged that they had a like contract with one Junius R. Case, a real estate agent in the city of Batesville; that Case was the agent for the buyer and assured the appellees that he had succeeded in making the sale, and upon said assurances they paid Case the commission of five per cent. They stated that, if it were determined that appellants were entitled to the commission, appellees would have to pay a double commission, which was never the intention

of the parties. They alleged that they had always been ready and willing to pay the five per cent. commission to the agent who sold the land, and that, if it should be determined that Case was not entitled to the commission, appellees were entitled to recover from Case, so they prayed that he be made a party. The court overruled the motion to make Case a party, to which appellees excepted.

The appellant, Holt, testified that he was in the real estate business; that W. H. Calaway, in connection with his son, W. L. Calaway, told witness that he could sell the York place; that he would take $25 an acre for it all around and would pay witness five per cent. commission for selling it. Appellant Halfacre brought Webster and his wife, the prospective buyers, to witness' office. Witness 'phoned Calaway to meet them on the farm. Calaway replied, all right, that he would be there in less than an hour. They met on the farm and walked over it. The Websters were very much pleased with the place. Witness had made the Websters a price at $25 per acre. There were 325 acres. After they got on the place Calaway raised the price to $8,500. Halfacre asked Calaway if he and Holt were to get $500 after Calaway had raised the price to $8,500. Calaway replied, "No, if the parties buy the farm, I will pay you all five per cent. commission." The Websters bought the farm. Halfacre and witness were not partners, but were equally interested in the deal. Halfacre brought the prospective purchasers to witness, and therefore witness agreed that they would divide the commission. Witness knew that Case & McLean, who were in the real estate business, also had a contract to sell the land. After witness had carried the Websters over the farm, Webster said that he guessed he would take it. Witness did not close the deal with him. Witness understood from Mr. Calaway, while they were talking there on the farm, that if the Websters bought the land, no matter at what price, or whom they bought it from, witness and Halfacre were to get their commission. Witness knew that $8,500 was more

than Calaway had ever asked for the place before, and when witness objected to the raise, then Calaway made the remark, "If these parties buy this farm, I will pay you five per cent. out of it."

The testimony of appellant Halfacre was in essential particulars the same as that of appellant Holt. He testified, among other things, that the Websters said that they liked the place witness had shown them better than any other, but stated that they had promised to look over some farms of Mr. Case, being the Bud Wilkins and the Erwin McGuire places. The Websters did not say, when they were looking over the farm, that Mr. Case had mentioned this farm to them. Witness didn't think that Case had mentioned the Calaway farm, but didn't know.

Junius Case testified that he was in the real estate business; that the Websters came to his office on the 23d day of December, and asked where they could find the county demonstrator, and Webster stated that he was looking for a farm, but would not buy anything unless the demonstrator would recommend it. Witness told Webster that he had a farm known as the Calaway place, which he would sell for $25 per acre. Witness called the county demonstrator, and he recommended the place at the price named. Witness offered to go and show the place, but the Websters stated that they had agreed to look at a place that Halfacre would show them, and they had agreed to go with him that morning. The Websters agreed to go with witness in the afternoon. Witness and his partner described the place and Webster stated that he thought the place was just what he wanted. When the Websters came back in the afternoon, witness learned that the place they had been to see was the Calaway farm and witness informed them that that was the place he had described to them that morning and had priced to them at $25 per acre, and they agreed to close the deal for the 324 acres at $8,100. Witness then notified Calaway, and he made the deed and paid witness his commis-

sion. Witness had had the Calaway farm listed since August 6, 1919, and the time would not expire until February 6, 1920. He had advertised the place for sale. Under the contract with Calaway, they were to sell the farm for $8,000 and were to receive five per cent. commission. His firm had made efforts to sell it. Witness had never been over the place with the Websters until after he sold the place to them. Witness presumed that the main reason the Websters bought the land from witness was that they could buy it for $8,100, whereas the others had made a price at $8,500. Witness had given a bond to Calaway to protect him in the commission.

The county demonstrator testified that Case mentioned the Calaway place, and he told the Websters that they couldn't beat the place at the price. The only place mentioned by Case that witness would recommend was the Calaway place.

Calaway testified that he had made the contract with McLean to sell the York place at $25 per acre for six months. Some time later he told Holt that if he sold the York farm before McLean he would give him a commission. He told him that it was already listed to McLean, but he thought the time had expired. He told Holt and Halfacre that the price would be $8,500 and that he would pay the commission to the man who sold the place. The next morning he went into Case's office and Case informed him that he had sold the place to the Websters. Witness asked at what price, and Case replied, "At $8,100, or $25 an acre." Witness replied that he didn't see how Case had the right to do that when witness had taken it off the market at that price. Case replied that it was the same price at which it was listed, and their time was not out. Witness saw that he was right about it and made the deed. Case claimed the commission, and witness told Case that Holt also claimed that he had sold the farm and claimed the commission. Witness told Case that he wanted to pay the commission to the right man, but didn't know who that was. Case proposed

to make a bond against all costs, damages and judgments so that witness would be protected, and witness agreed to that and the bond was made and the commission paid to Case. Witness never agreed to pay more than one commission.

Mrs. Webster testified that they bought the Calaway farm from Case. Halfacre told them that Calaway had raised the price of the place to $8,500 and witness said that they did not want to buy the place at that price; that they went to see Case, and Case told them that they could have the land for $25 per acre, so they bought it from him. The only time they saw the place was when Holt showed it to them. Holt told them that Calaway had raised the price to $8,500, and they decided not to take it at that figure, but bought it from Case at $25. Case said he could sell the place to them at $25 an acre, and that was the reason they bought it from him.

The court instructed the jury that to entitle the plaintiffs to recover they must show by a preponderance of the evidence that they had a contract with the defendant, Calaway, by which they would receive a commission of five per cent. if the Websters bought the land in question, regardless of whether or not they, the plaintiffs, made the sale. The appellants asked the court to instruct the jury as follows: "If you find from the evidence that Calaway acted unfairly toward the plaintiffs or interfered with them in their negotiations for the sale of the land and that said unfairness and interference kept the plaintiffs from making said sale, then your verdict should be for the plaintiffs." The court refused this prayer for instruction, and appellants objected and duly excepted to the ruling. From a judgment in favor of the appellees is this appeal.

The prayer of appellants for the instruction above was not abstract. There was testimony from which the jury could have found that if W. H. Calaway had not raised the price of the land after appellants had shown the same to the Websters and had priced it to them at

$25 per acre, the Websters would have purchased the same from the appellants and not from Case; that the appellee had told appellants that they could sell the land at $25 per acre, and that they should receive a commission of five per cent. for making such sale; that, after appellants had procured a purchaser ready and able to buy at the price named, Calaway raised the price, and, after doing so, permitted Case to sell the land at the same price he had told appellant they might sell the land for. The testimony tending to prove these facts made it an issue for the jury as to whether or not the appellee, Calaway, had prevented the appellants from making the sale and thus earning their commission. Since the court told the jury that the burden was on appellants to prove that they had a contract with the appellee for a five per cent. commission if the Websters bought the land, regardless of whether or not the appellants made the sale, the court should have submitted to the jury the issue as to whether the conduct of appellee, Calaway, interfered with and prevented the appellants from making the sale. For the error in not granting appellant's prayer for instruction the judgment is reversed and the cause is remanded for a new trial.